Opinion for the court filed by Chief Judge RADER. Dissenting opinion filed by Circuit Judge REYNA.
RADER, Chief Judge.
The Trademark Trial and Appeal Board (“Board”) dismissed with prejudice Stephen Slesinger, Inc.’s (“Slesinger” or “SSI”) challenge to the trademark rights related to A.A. Milne’s literary work featuring Winnie-the-Pooh and other charac *642 ters owned by Disney Enterprises, Inc. (“Disney”). During the course of the parties’ dispute, Slesinger filed twelve opposition and cancellation proceedings with the Board consolidated under Stephen Slesinger, Inc. v. Disney Enter., Inc., 98 U.S.P.Q.2d 1890 (T.T.A.B.2011) (the “Consolidated Proceedings ”). Because the Board properly barred Slesinger’s proceeding, granted summary judgment, and dismissed the case due to collateral estoppel, this court affirms.
I.
For decades, Slesinger and Disney have disputed the Winnie-the-Pooh rights in both state and federal courts as well as at the Board. This case questions the registration of various trademarks derived from the Winnie-the-Pooh works. Because the Board premises its dismissal on collateral estoppel, this court addresses briefly the background of Slesinger’s and Disney’s agreements about the marks.
In 1930, A.A. Milne transferred to Stephen Slesinger exclusive merchandising and other rights based on the Winnie-the-Pooh works in the United States and Canada. In 1961, Slesinger exclusively “assigned, granted, and set over to” Walt Disney Productions the rights in the 1930 agreement with A.A. Milne. Milne ex rel. Coyne v. Slesinger, No. 2:02-cv-0858, 2009 WL 3140439, at *2 (C.D.Cal. Sept. 25, 2009) (“Seller hereby assigns, grants, and sets over unto the purchaser all of the further rights in and to said work’ [sic] which are set forth in Paragraph 3 hereof ...”).
In a 1983 agreement, Slesinger acknowledged its transfer and assignment of “rights it had acquired from A.A. Milne to Disney by agreement dated 14 June 1961.” Id. The 1983 agreement then revoked the prior agreements and gave Slesinger “all of the rights in the work which were transferred to [Slesinger] in 1930 and amended from time to time.” Id. In turn, Slesinger transferred its rights back to Disney, as the agreement also provided that Slesinger “assigns, grants, and sets over unto Disney the sole and exclusive right in the United States and Canada to project, exhibit, and broadcast visually and audibly any motion pictures ...” as well as “various further rights in and to said work, which include merchandise ...” television, radio, and analogous processes. Id.
While the agreement sought to resolve the parties’ previous disputes and clarify their contractual arrangements, the parties interpret the 1983 agreement differently. Slesinger contends it retained rights in the Winnie-the-Pooh works, while Disney maintains Slesinger assigned all rights to Disney.
In 1991, before the present litigation began, Slesinger brought an action in Los Angeles Superior Court alleging Disney breached the 1983 agreement. Slesinger claimed Disney’s revenue from Winnie-the-Pooh products was not accurately calculated, meaning that Disney underpaid royalties. Specifically, Slesinger alleged in state court that the 1983 agreement gave Disney valuable rights “in exchange for a share of the receipts from exploitation of the Pooh characters.” Id. at *4. In the state court proceedings, Slesinger acknowledged that the 1983 agreement “re-granted, licensed and assigned all rights acquired rights [sic] to Disney.” Id. Slesinger further explained that “the grant of all ‘further rights’ in and to the Pooh Characters ... is a catch-all designed to ensure that Slesinger was granting ... all of the additional commercial exploitation rights Slesinger acquired that are not specifically mentioned in the 1983 Agreement.” Id. The California state court ultimately dismissed Slesinger’s claim, and the California Court of Appeals affirmed.
*643 Meanwhile, the parties’ dispute over royalties proceeded in the Central District of California. In October 2006, Slesinger amended its district court claim to allege that Disney’s exploitation of the Winnie-the-Pooh characters infringed Slesinger’s trademarks and copyrights. Disney moved to dismiss the claim because Slesinger had admitted in state court that Disney’s uses of the Winnie-the-Pooh characters were authorized. Disney also contended that Slesinger granted all of the rights it had in the Winnie-the-Pooh characters to Disney and that Slesinger retained no rights which Disney could infringe.
In 2009, the district court considered the parties’ cross motions for summary judgment based on the 1983 agreement and addressed the agreement’s scope, judicial estoppel, and California’s Business and Professions Code. The district court noted the parties’ actions indicated the Winnie-the-Pooh rights were transferred to Disney in the 1983 agreement. Between 1983 and 2006, Disney registered at least fifteen trademarks. In 2004, Disney registered copyrights in forty-five works and renewed copyright registrations for another fourteen. In contrast, Slesinger did not attempt to perfect or register trademarks or copyrights before asserting its district court claims. The district court further noted that Slesinger never objected to those registrations until 2006, when the state court dismissed Slesinger’s claims for royalty agreement breach. Accordingly, the California district court based its judgment against Slesinger on “the conduct of the parties over the nearly 50 years of their relationship.” Id.
The district court also addressed Slesinger’s arguments that it did not relinquish all the rights it received from A.A. Milne to Disney. However, because Slesinger could not specifically identify any retained right, the court determined that the contracts did not permit any retention of rights. Thus, upon its review of the 1983 agreement, the court found that Slesinger granted its acquired rights to Disney. In sum, given the parties’ conduct, and the “clear terms” of the agreements, the district court determined that Slesinger “transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights.” Id.
Applying the doctrine of judicial estoppel, the district court found Slesinger’s arguments “inconsistent with statements made and positions taken by SSI in the state court litigation.” Id. at *5. In state court, Slesinger “has insisted that Disney’s uses of the works were derived from the SSI grants of ‘all’ rights to sound, word, picture representation, television, any representational device, similar or allied devices, videocassettes, promotion and advertising in all media, exploitation and licensing in all media.” Id. at *4. Thus, the district court based its finding of estoppel on Slesinger’s inconsistent positions. Id. at *5 (“SSI’s conduct demonstrates a blatant effort to salvage its lawsuit against Disney by taking an [sic] taking entirely inapposite and inconsistent posture in this case.”).
This dispute at the Board began in December 2006. Slesinger now attempts to cancel Disney’s applications to register the marks POOH, WINNIE THE POOH, CLASSIC POOH, MY FRIENDS TIGGER & POOH, and other marks comprising the names or images of “Pooh” and related fictional characters. Slesinger claims the agreement with Disney is a license, which does not grant Disney the right to register the marks. Disney maintains the agreement assigned all the Winnie-the-Pooh rights to Disney and filed a motion to dismiss. Treating the motion as one for summary judgment, the Board *644 found that collateral estoppel barred Slesinger’s claims and granted Disney’s motion. The Board’s decision relied on the earlier district court order in Milne ex rel. Coyne v. Slesinger, No. 2:02-cv-0858, 2009 WL 3140439 (C.D.Cal. Sept. 25, 2009). Accordingly, this court therefore considers the Board’s application of collateral estoppel based on the Central District of California’s ruling. This court has jurisdiction over Slesinger’s appeal pursuant to 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).
II.
This court reviews the Board’s decision to grant summary judgment without deference. Odom’s Tenn. Pride Sausage, Inc. v. FF Acquisition, LLC, 600 F.3d 1343, 1345 (Fed.Cir.2010). The doctrine of issue preclusion, or collateral estoppel, protects the finality of judgments by “preclud[ing] relitigation in a second suit of issues actually litigated and determined in the first suit.” In re Freeman, 30 F.3d 1459, 1465 (Fed.Cir.1994) (citing Lawlor v. Nat’l Screen Serv. Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Collateral estoppel requires four elements: (1) a prior action presents an identical issue; (2) the prior action actually litigated and adjudged that issue; (3) the judgment in that prior action necessarily required determination of the identical issue; and (4) the prior action featured full representation of the estopped party. See Laguna Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed.Cir.2012) (citing Freeman, 30 F.3d at 1465).
Slesinger concedes that this case satisfies the first and fourth factors. Indeed, the Central District of California litigated the identical issue, the scope of the 1983 agreement, and Slesinger was fully represented.
On the second factor, Slesinger contends that the district court did not properly consider the critical issue on the scope of the 1983 agreement. The record shows that the district court extensively analyzed the scope of the 1983 agreement. For example, Slesinger specifically presented this identical issue as its Second Claim for Relief. Indeed Slesinger maintained in that action that the 1983 agreement was a license rather than an assignment. Likewise, the parties’ district court briefing extensively addressed the agreement’s scope as an assignment or a license. Accordingly, the record shows that the district court litigated and decided the identical issue.
Slesinger, however, argues that the district court did not specifically declare that Slesinger “has no rights at all ”, thus implying some rights may survive the 1983 agreement. To bolster this contention, Slesinger argues the district court’s ruling, which uses the term “retained rights,” implies Slesinger licensed its rights to Disney. Also, it claims the district court’s “broad” conclusion did not definitively resolve the license or assignment issue. Slesinger notes the district court did not use the term “assignment” and its reference to the “grant” or “transfer” supports Slesinger’s contention the 1983 agreement was a license because such terms are associated with licensing.
To the contrary, the Board properly addressed these points and dismissed them as meritless. In the words of the Board, “[t]he clear wording of the district court’s order does not support SSI’s contention that the decision was focused only on whether a particular array of uses by Disney of the POOH works was authorized.” Consolidated Proceedings, 98 U.S.P.Q.2d at 1897.
From this court’s perspective, the Board’s determination accurately tracks *645 the district court’s holding that the 1983 agreement represented “a transfer from SSI to Disney of all of SSI’s interests in the Pooh characters,” Milne, 2009 WL 3140439 at *4 (emphasis in original), and that “under the clear terms of the parties’ agreements, SSI transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights.” Id. Moreover, the “unambiguous nature of the contracts is strongly supported by the conduct of the parties over the nearly 50 years of their relationship,” as both parties treated the agreements as constituting a complete assignment of Slesinger’s rights to Disney. Id. Thus, the record shows that the district court did not find that Slesinger “retained” some rights. See Freeman, 30 F.3d at 1466 (“[T]he requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it.”) (citing Mother’s Rest, Inc. v. Mama’s Pizza, Inc., 723 F.2d 1566, 1569 (Fed.Cir.1983)).
The record shows the district court concluded that Slesinger completely granted all its rights to Disney as an assignment. See, e.g., In re Computer Eng’g Assocs., 337 F.3d 38, 46 (1st Cir.2003) (assignment where party divests itself of “all right, interest, and control in the property”); In re Apex Oil Co., 975 F.2d 1365, 1369 (8th Cir.1992) (“assignment” defined “as a transfer by the assignor of all rights in the property”); 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18:1 (4th ed. 2012) (assignment is “an outright sale of all rights in ... [a] mark,” whereas license “is a limited permit to another to use the mark”). With such a clear explanation that Slesinger conveyed all rights completely to Disney, it is immaterial that the district court used the terms “transfer” and “grant” rather than “assignment.” Moreover, it is the court’s ultimate “judgment that matters,” not the language used to discuss the court’s rulings. Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C.Cir.1992) (emphasis in original); see also Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir.1992) (“When the issue for which preclusion is sought is the only rational one the fact finder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made.”); 18 Lawrence B. Solum, Moore’s Federal Practice — Civil § 132.03[3][e] (Matthew Bender 3d ed.) (“An issue that was necessarily implicit in a larger determination is given issue preclusive effect. An issue that is distinctly presented in the pleadings and necessarily resolved may be reflected in the decision that includes that point, although it may not be expressly mentioned in the decision.”).
Finally, after determining that Slesinger had no ownership interest in the Pooh rights, the district court concluded that Slesinger “fully adjudicated all claims and counterclaims” and held “all of [Slesinger’s] Counterclaims are dismissed on the merits and with prejudice.” Milne, 2009 WL 3140439 at *6. The district court unequivocally decided that Slesinger was not entitled to its requested relief. Therefore, the record shows that the district court ruled on and denied Slesinger’s specific request for an order directing the Board to correct Disney’s Pooh-related trademark registrations to reflect Slesinger’s name.
The third element of the estoppel formula prevents “the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue.” Mother’s Rest., 723 F.2d at 1571. In this instance, the district court’s ruling is neither incidental nor collateral. Rather it directly addressed Slesinger’s ownership interest in the Pooh rights. The record *646 shows that the evaluation of these rights was clearly an essential element of the judgment. Indeed the district court had to determine this issue before deciding whether Disney’s uses of the Winnie-the-Pooh rights were infringing. Likewise, it was essential to first determine whether Slesinger had any ownership rights in the marks before considering Slesinger’s request to correct Disney’s trademark registrations to Slesinger’s name.
Accordingly, the Board correctly applied collateral estoppel to prevent Slesinger from asserting a claim that its 1983 grant of rights to Disney was a license as opposed to an assignment.
AFFIRMED
Costs
Each party shall bear its own costs.