# United States Court of Appeals for the Federal Circuit

---

**ODYSSEY LOGISTICS AND TECHNOLOGY CORPORATION,**
*Plaintiff-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2019-1066

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:18-cv-00079-AJT-JFA, Judge Anthony J. Trenga.

---

Decided:  May 22, 2020

---

ROBERT BAUER, Bauer Law Offices, Pittsburgh, PA, argued for plaintiff-appellant.  Also represented by CHARLES MOLSTER, III, Law Offices of Charles B. Molster, III PLLC, Great Falls, VA.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for defendant-appellee.  Also represented by THOMAS

2                          ODYSSEY LOGISTICS AND TECH. v. IANCU

W.  KRAUSE;  R.  TRENT  MCCOTTER,  G.  ZACHARY
TERWILLIGER, Office of the United States Attorney, United
States Department of Justice, Alexandria, VA.

_____

Before LOURIE, REYNA, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This case presents three Administrative Procedure Act
challenges involving the United States Patent and Trade-
mark Office.  Odyssey challenges procedural actions taken
by the PTO in two patent applications and makes a third
facial challenge to certain PTO procedural rules governing
practice before the Patent Trial and Appeal Board in *ex
parte* appeals.  The Eastern District of Virginia dismissed
the former two challenges for lack of subject matter juris-
diction because the PTO had not taken final agency action.
It dismissed the latter challenge as barred by 28 U.S.C.
§ 2401, the six-year statute of limitations for challenges to
agency action.  Because we agree with the district court
that the first two challenges concern non-final agency ac-
tion and the latter challenge is barred by § 2401, we affirm.

I

Odyssey Logistics and Technology Corporation (Odys-
sey), disapproving of certain decisions of the PTO, chal-
lenged the legality of those PTO decisions in district court
under the Administrative Procedure Act (APA).  The first
challenge (Count I) relates to the prosecution of U.S. Pa-
tent Application No. 11/005,678.  The second challenge
(Count II) relates to the prosecution of U.S. Patent Appli-
cation No. 11/465,603.  The third challenge (Count III) con-
tests whether amendments to the Rules of Practice Before
the Board of Patent Appeals and Interferences in *Ex Parte*

Appeals conform with the PTO's statutory authority.[1] *See* Rules of Practice Before the Board of Patent Appeals and Interferences in *Ex Parte* Appeals, 76 Fed. Reg. 72,270 (Nov. 22, 2011) (codified at 37 C.F.R. pts. 1 and 41). We recount the factual and procedural history of each challenge in turn.

## A

Count I arises from the examination of Odyssey's '678 patent application. Odyssey filed the '678 application in 2004. After a number of procedural disputes over the examination of the application, including multiple appeals to this Court, *see In re Riggs*, 457 F. App'x 923 (Fed. Cir. 2011); *Odyssey Logistics & Tech. Corp. v. Kappos*, No. 11-1441 (Fed. Cir. filed June 20, 2011) (voluntarily dismissed), the Patent Trial and Appeal Board heard Odyssey's appeal of the examiner's rejections in the '678 application. On April 29, 2016, the Board reversed the examiner's rejections. J.A. 1225, 1229–30. The PTO did not, however, issue Odyssey a notice of allowance for the '678 application.

Instead, on September 23, 2016, the Technology Center Director issued what Odyssey refers to as the "examiner's request for rehearing."[2] Appellant's Br. at 14; J.A. 1267. The rehearing request argued that the Board had applied

---

[1]    These rules refer to the Board of Patent Appeals and Interferences because they were promulgated before the America Invents Act replaced the BPAI with the Patent Trial and Appeal Board on September 16, 2012. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, §§ 7, 35, 125 Stat. 284, 313, 341 (Sept. 16, 2011) (codified as amended at 35 U.S.C. § 6). Because the relevant events here occurred after that date, we refer to the deciding administrative body as the Patent Trial and Appeal Board.

[2]    The PTO uses "rehearing" to describe "reconsideration." 37 C.F.R. § 41.2.

an incorrect version of 35 U.S.C. § 102(e) to determine whether a reference qualified as prior art and also requested clarification as to which claims the Board was reversing. J.A. 1269–72. Odyssey was given the opportunity to respond to the rehearing request both before and after the Board received it. *See* J.A. 1282, 1371. On both occasions, Odyssey did not address the merits of the examiner's arguments, instead objecting to the procedural propriety of the rehearing request. *See id.* Odyssey also filed petitions objecting to the rehearing procedure, and requests for reconsideration when those petitions were dismissed. J.A. 1326, 1334, 1357, 1360, 1362. Odyssey eventually made some arguments on the merits "under protest," J.A. 1370, but instead of waiting for the Board's decision on these arguments, Odyssey filed this challenge to the request for rehearing in the Eastern District of Virginia.

B

Count II arises from the prosecution of Odyssey's '603 application. Odyssey filed the '603 application in 2006. After a final rejection of all claims of the '603 application, Odyssey appealed the examiner's rejections and, at the same time, filed a petition demanding that the examiner make certain evidence part of the written record and supplement his responses to Odyssey's arguments with additional explanation. J.A. 1805, 1816; J.A. 1858. The examiner responded, declining to include the additional evidence but further explaining his disagreement with Odyssey's arguments for allowance. Because the examiner had responded, the Technology Center Director dismissed the petition as moot.

With this petition resolved, the examiner filed his answer to Odyssey's appeal brief. The examiner's answer did not designate any new grounds of rejection, *see* J.A. 1876, but Odyssey believed that the answer included new grounds, so Odyssey filed a new petition, requesting that the Technology Center Director designate certain portions

of the examiner's answer as new grounds of rejection. J.A. 1894. The Technology Center Director dismissed this petition on the merits, finding that the portions of the answer with which Odyssey took issue did not set forth new grounds of rejection. J.A. 1910–13. Rather than filing a brief replying to the examiner's answer and waiting to see if the Board would strike certain portions of its reply as improper, Odyssey challenged the dismissal of the petition in the Eastern District of Virginia.

## C

Count III arises from the PTO's 2011 amendments to its rules of practice in *ex parte* appeals. *See* 76 Fed. Reg. 72,270. The PTO gave four purposes for these amendments: (1) "to ensure that the Board has adequate information to decide *ex parte* appeals on the merits, while not unduly burdening appellants or examiners with unnecessary briefing requirements"; (2) "to eliminate any gap in time from the end of briefing to the commencement of the Board's jurisdiction"; (3) "to clarify and simplify petitions practice on appeal"; and (4) "to reduce confusion as to which claims are on appeal." *Id.* at 72,271. The PTO first published the amendments as a notice of proposed rulemaking in the Federal Register on Nov. 15, 2010. Rules of Practice Before the Board of Patent Appeals and Interferences in Ex Parte Appeals, 75 Fed. Reg. 69,828 (proposed Nov. 15, 2010). The final rules were published on Nov. 22, 2011. *See* 76 Fed. Reg. 72,270. The amendments apply to all *ex parte* appeals filed on or after January 23, 2012. *Id.* Odyssey challenged the legality of these amendments, framing this Count as a "facial" challenge to the 2011 amendments. *See* J.A. 31–32, 45.

## II

In the district court, the PTO moved to dismiss all three counts. It argued that the district court lacked subject matter jurisdiction for the first two counts, and that the third count was barred by the statute of limitations.

Odyssey opposed the dismissal of Counts I and III. Odyssey conceded that Count II should be dismissed but urged that it should be dismissed as moot under this Court's intervening decision in *In re Durance*, 891 F.3d 991 (Fed. Cir. 2018), rather than for lack of subject matter jurisdiction. *See* J.A. 1986.

The district court agreed with the PTO and dismissed all three counts. The court dismissed the first two counts because Odyssey was challenging actions not yet final before the Board; the Board could provide Odyssey with an adequate remedy, and if not, Odyssey had statutory remedies for appeal under 35 U.S.C. §§ 141 or 145. The court held alternatively that it lacked a final agency action that would provide jurisdiction under § 704 of the APA. The court did not address mootness, noting that doing so would require it to "rule substantively on whether the recent decision in the Federal Circuit in the *Durance* case" applied to Count II. J.A. 1996.

The district court dismissed Count III, holding that 28 U.S.C. § 2401 barred the claims. J.A. 1997. The court held that *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012), requires the statute of limitations for a facial APA challenge to run from the date the regulations were published. Because the amended *ex parte* appeal regulations were published on November 22, 2011, and the complaint was filed on January 23, 2018 (six years after the *effective* date rather than the publication date), the statute of limitations had run. J.A. 1997. The district court held that, even if construed as an as-applied challenge, it lacked subject matter jurisdiction to decide the challenge because, without final agency action, the challenge could still be raised in the ongoing Board proceeding.

Odyssey timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## III

We review procedural rules following "the rule of the regional circuit, unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). APA claims against the PTO "raise[] a substantial question of patent law." *Exela Pharma Scis., LLC v. Lee*, 781 F.3d 1349, 1352 (Fed. Cir. 2015). We "review[] *de novo* the district court's dismissal of [a plaintiff's] APA claims against the PTO for lack of subject matter jurisdiction." *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354 (Fed. Cir. 2012). As to procedural questions not relating to patent law, the Fourth Circuit "review[s] the district court's grant of a motion to dismiss de novo, focusing only on the legal sufficiency of the complaint." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013).

### A

We first address whether Odyssey satisfied the APA's finality requirement, *see* 5 U.S.C. § 704, for judicial review of Count I, Odyssey's challenge to the Examiner's Request for Rehearing in the '678 appeal. On appeal, Odyssey argues that the Board's reversal of the examiner's rejections in the '678 appeal was a final agency action, and the rehearing proceedings are an *ultra vires* action by the PTO. Odyssey characterizes the rehearing as a second Board proceeding and urges us to consider the Board's rehearing as an "attempted end-[run] around the inability of the PTO" to directly appeal the Board's decision. Appellant's Br. 31. We disagree.

In the context of the APA, "an action is final if it both (1) mark[s] the consummation of the agency's decisionmaking process and (2) is one by which rights or obligations have been determined, or from which legal consequences will flow." *Smith v. Berryhill*, 139 S. Ct. 1765, 1775–76 (2019) (internal quotations omitted) (first alteration in original). Until the Board issues its rehearing decision, the

PTO has not consummated its decision-making process and Odyssey's rights and obligations in the '678 patent have not been determined. Without such final action from the PTO, the APA does not entitle Odyssey to judicial review.

The rehearing process here is ordinary agency action in accordance with the PTO's Manual of Patent Examining Procedure. *See* M.P.E.P. 1214.04.[3] During a rehearing, the Board continues to consider the validity of an application's claims. Although it found the claims allowable during the '678 application's appeal, the Board may reconsider its decision when the examiner requests rehearing. *Id. See also In re Alappat*, 33 F.3d 1526, 1531 (Fed. Cir. 1994), *abrogated on other grounds by In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (allowing the Director to designate members of the Board to rehear a Board decision after the examiner requested rehearing under MPEP 1204.04); *Application of Schmidt*, 377 F.2d 639, 641 (C.C.P.A. 1967) ("While requests for reconsideration by examiners are rare, it has been the settled practice to entertain them . . . ."). Under the APA, "[t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review." *Stone v. I.N.S.*, 514 U.S. 386, 392 (1995). The

---

[3]    Under MPEP 1214.04, "[t]he examiner may request rehearing of the Board decision. Such a request should normally be made within 2 months of the return of the application to the [Technology Center] . . . ." Calling the request the "examiner's" is somewhat of a misnomer: "All requests by the examiner to the Board for rehearing of a decision must be approved by the [Technology Center] . . . Director and must also be forwarded to the Office of the Deputy Commissioner for Patent Examination Policy for approval before mailing." *Id.* The request is entered in the electronic file and "mailed or given to the" applicant, who has two months to reply before the request is forwarded to the Board. *See id.*

reconsideration process is the last stop on the PTO's path to a final disposition, after which, if the Board does reverse itself, Odyssey will have an "adequate remedy in court" by appealing the Board's decision under 35 U.S.C. §§ 141 or 145. *See* 37 C.F.R. § 90.3(b)(1) (explaining that the applicant's time to challenge a Board decision in an appeal or civil action starts anew after the Board's action on rehearing); *cf. Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015) (finding no final agency action in a suit challenging the PTO's refusal to terminate reexamination proceedings despite the request of the patent owner).

In Odyssey's view, MPEP 1214.04 cannot apply because the examiner's request for rehearing did not occur within 63 days, and, according to Odyssey, the Board loses jurisdiction 63 days after it issues its final decision, and these regulations must supersede PTO procedural guidelines from the MPEP. Appellant's Reply Br. 15–17; (citing 37 C.F.R. §§ 41.52, 41.35(b)(2)). *See also* 37 C.F.R. § 90.3 (requiring than an applicant appeal a Board decision under § 141 or § 145 within 63 days). But neither § 41.52 nor § 41.35(b)(2) constrict the Patent Office's time to request rehearing; they instead bind the patent applicant. *E.g.*, 37 C.F.R. § 41.52(a)(1) ("*Appellant* may file a single request for rehearing within two months of the date of the original decision of the Board." (emphasis added)). Instead, the regulatory context suggests that the Director may override the Board's "jurisdiction" so long as he does not circumvent eventual Board review. *See* 37 C.F.R. § 41.35 ("Prior to the entry of a decision on the appeal by the Board, the Director may sua sponte order the proceeding remanded to the examiner." (internal cross-reference omitted)); *Hyatt v. U.S. Pat. & Trademark Off.*, 904 F.3d 1361, 1375 (Fed. Cir. 2018) ("Allowing examiners to reopen prosecution does not deprive applicants of their right to appeal final examiner rejections because reopening prosecution cannot circumvent PTAB review."), *cert. denied sub nom. Hyatt v. Iancu*, 140 S. Ct. 45 (2019).

If the Director may divest the Board of its authority over an appeal so long as he does not circumvent the applicant's statutory right to appeal, the Director logically also may grant the Board authority to reconsider its appeal. Issuing a request for rehearing under MPEP 1214.04 simply makes use of the Director's authority over the examination process under 35 U.S.C. §§ 131, 132. *See* M.P.E.P. 1002.02 (delegating the Director's authority to approve "[r]equests from the examiner for . . . rehearing of a [Board] decision" to the Deputy Commissioner for Patents).

In some circumstances, the PTO's delay in making a request for rehearing, although technically conforming with the statute and regulation, may cause unfair prejudice to the applicant of such gravity that an applicant may seek otherwise-premature recourse in the courts. *Hyatt*, 904 F.3d at 1375 ("[T]he APA offers a remedy for [abusive use of agency rules to delay proceedings] by enabling reviewing courts to compel agency actions unlawfully withheld or unreasonably delayed without adequate reason or justification.") But nothing indicates that such abusive action took place here. If Odyssey did encounter any unfair prejudice, it may raise the issue after the Board has reached a final decision. And if Odyssey prevails before the Board, it can seek appropriate Patent Term Adjustment to compensate for any delay. *See* 35 U.S.C. § 154(b)(4).

B

We next address whether Odyssey met the final agency action requirement for Count II, Odyssey's challenge to the PTO's dismissal of its petition '603 application, or whether Count II should have been instead dismissed as moot under *Durance*. We affirm the district court's resolution of Count II. The dismissal of Odyssey's petition to designate new grounds is non-final agency action because the dismissal did not determine any rights or obligations or result in any legal consequences. Until the Board refuses to consider arguments made in Odyssey's reply brief for

exceeding the permissible scope of the brief under 37 C.F.R. § 41.41, the denial of Odyssey's petition to designate new grounds has not determined any rights or resulted in any legal consequences.[4] The district court was therefore correct to dismiss Count II for lack of finality.

The district court was not obligated to dispose of the case on the more uncertain mootness ground—or even consider it. "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted); *see Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 233 (4th Cir. 2008) (upholding the district court's dismissal of a case on APA finality grounds without reaching a "difficult to resolve" standing issue). The district court did not err by "tak[ing] the less burdensome course." *Sinochem*, 549 U.S. at 436.

C

Finally, we turn to whether the district court properly dismissed Odyssey's facial challenge to the PTO's 2011 *ex parte* appeal amendments because the statute of limitations had run. Odyssey argues that the statute of limitations governing facial challenges of agency regulations

---

[4] Although the district court appropriately declined to reach how *Durance* may or may not apply to the '603 appeal, *Durance* is instructive in showing that other litigants understood the correct process to raise an APA challenge to the PTO's failure to designate new grounds of rejection. In that case, the appellants submitted a reply brief containing the arguments they wanted to make, waited for the final decision of the Board, requested rehearing, and only *then* turned to the courts for judicial review of the agency action. *See In re Durance*, 891 F.3d 991, 999–1000 (Fed. Cir. 2018).

under 28 U.S.C. § 2401 starts on the effective date of the regulations, not the published date.  Odyssey urges us to ignore as dictum the Fourth Circuit's statement to the contrary in *Hire Order*, 698 F.3d at 170, and to apply *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008), which, in its view, suggests that the effective date provides the correct rule.  Appellant's Br. 35–36; Appellant's Reply Br. 24–27.  Odyssey argues that *Hyatt,* 904 F.3d at 1372, confirms this conclusion because it makes a substantive facial challenge to the rules' statutory compliance and therefore, under *Hyatt*, "the right of action accrued from the first adverse application of the amended rules against Odyssey, which could not have been any earlier than the effective date of the amended rules."  Appellant's Br. 38.  We disagree with Odyssey on all fronts.

The district court's decision is unquestionably correct under *Hire Order*.  Odyssey characterized Count III as a facial challenge in its amended complaint, J.A. 45, and requested a remedy that would go beyond any applications of the contested rules to its appeals.  J.A. 48.  Odyssey does not retreat from that characterization before this Court. *See* Appellant's Br. 34, 38; Appellant's Reply Br. 27.  Under *Hire Order*, for "a facial challenge to an agency ruling[,] . . . the limitations period begins to run when the agency publishes the regulation."  *Hire Order*, 698 F.3d at 170 (internal quotation marks omitted).  The challenged rules were published in the Federal Register on November 22, 2011; Odyssey filed its facial challenge on January 23, 2018, more than six years later.  J.A. 1997.  Count III is therefore barred by 28 U.S.C. § 2401.

We need not decide whether this rule is a dictum, because the other authority Odyssey cites leads to the same conclusion.  *Hyatt* definitively sets out the rule applied by this Court, which accords with *Hire Order* for facial,

substantive challenges like that raised here.[5] Under *Hyatt,* the statute of limitations for a challenge to the PTO's statutory authority to promulgate a regulation begins running "either when the agency makes its initial decision or at the time of an adverse application of the decision against the plaintiff, whichever comes later." *Hyatt*, 904 F.3d at 1372. The nature of Odyssey's challenge, being a facial challenge, means that it does not assert any adverse applications or seek relief in any specific applications. *Cf. Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) ("[A] court considering a facial challenge is to assess the constitutionality of the challenged law without regard to its impact on the plaintiff asserting the facial challenge. In contrast, an as-applied challenge is based on a developed factual record and the application of a statute to a specific person[.]" (internal quotation marks and citation omitted; second alteration original)).

---

[5] Numerous courts of appeal have held similarly to *Hire Order* and *Hyatt* that the statute of limitations for a substantive *facial* challenge to a regulation runs from the date of publication. *See Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017); *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); *Pub. Citizen v. Nuclear Reg. Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990); *see also Comanche Nation of Oklahoma v. Zinke*, 754 F. App'x 768, 772 (10th Cir. 2018) (explaining that "[p]ublication in the federal register generally starts the limitations period for facial challenges" of a regulation and noting—based on *Wind River*, from which *Hyatt* also drew reasoning—that timing of the statute of limitations based on an "adverse application" of a regulation is inapplicable to a substantive facial challenge), *cert. denied*, 139 S. Ct. 2645 (2019).

Without any adverse applications, the statute of limitations must accrue "when the agency makes its initial decision." *Hyatt*, 904 F.3d at 1372. That decision is coterminous with the final agency action, which occurs when the agency promulgates the final regulation. *See Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question [in determining whether an agency action is final] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."). In no case would the agency's "initial decision" regarding a regulation take place on the effective date of the regulation.

*Hyatt* also forecloses Odyssey's arguments about *Preminger*. *Hyatt* explains that *Preminger* involved a procedural challenge, which alone distinguishes it from this case. *Hyatt*, 904 F.3d at 1372 (citing *Preminger*, 517 F.3d at 1307). In addition, *Hyatt* relies on *Preminger* for the rule that the relevant "final agency action" starting accrual of the statute of limitations for a procedural challenge is the *promulgation* of a regulation. *Id.* (citing *Preminger*, 517 F.3d at 1307).

Applying either *Hire Order* and Fourth Circuit law or *Hyatt* and Federal Circuit law, 28 U.S.C. § 2401 bars Count III. We therefore affirm the district court's dismissal of Count III because the statute of limitations to challenge the *ex parte* appeal rules had run before Odyssey filed suit.

IV

We have considered the parties' other arguments and find them unpersuasive. Odyssey brought its two challenges to the PTO's actions during its *ex parte* appeals too early and brought its challenge to the PTO's *ex parte* appeal regulations too late. The district court's dismissal of the former two challenges for lack of subject matter jurisdiction and of the latter challenge for failure to state a claim is

ODYSSEY LOGISTICS AND TECH. v. IANCU                    15

## AFFIRMED