# United States Court of Appeals for the Federal Circuit

---

**IN RE: GLENN E. RIGGS, JOSEPH J. BAINOR, STANLEY M. BAINOR, RALPH K. BRECHTER, DOUGLAS L. CLARK, JAMES R. CLARK, JON L. CLOW, AMY DALEY, LARRY HU, LOUIS F. INDELICATO, DOUG JOHNSTON, JOHN H. KIVELA, WILLIAM J. LOHAN, MICHAEL D. MICHAUD, DONALD H. MUELLER, MICHAEL M. NAUGHTON, PETER P. NELSON, ROBERT PHANEUF, JOSEPH F. ROCKY, JR., ROBERT H. SHELLMAN, ALAN D. SHOLLENBERGER, M. NADINE WILLETT,**

*Appellants*

---

2022-1945

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/005,678.

---

Decided: March 24, 2025

---

ROBERT BAUER, Bauer & Joseph, Pittsburgh, PA, for appellants.

BRIAN RACILLA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Katherine K. Vidal. Also represented by DANIEL KAZHDAN, AMY J. NELSON, PETER JOHN SAWERT.

---

Before MOORE, *Chief Judge*, STOLL, and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

This case stems from an Examiner's request for a rehearing by the U.S. Patent Trial and Appeal Board to correct the Board's determination that a published patent application did not qualify as prior art under pre-AIA 35 U.S.C. § 102(e)(1). Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011). The Board granted the request and determined that the Examiner was correct—the reference did qualify as prior art.

Appellants are the named inventors listed on the patent application at issue: U.S. Patent Application No. 11/005,678. They appeal the Board decision affirming the Examiner's rejection of the '678 application. The Examiner rejected claims 1, 2, 8, 10–13, and 24–25 under pre-AIA 35 U.S.C. § 102(e) as anticipated by Lettich[1] and rejected claims 3, 5–7, 9, 15–20, and 22 under 35 U.S.C. § 103 as obvious over Lettich in view of Rojek.[2] After determining that Lettich qualified as prior art under pre-AIA § 102(e)(1), the Board sustained the Examiner's anticipation and obviousness rejections. Because the Board conducted an incomplete analysis in determining whether Lettich qualifies as prior art under § 102(e), we vacate and remand.

---

[1]    Vertical Systems and Methods for Providing Shipping and Logistics Services, Operations and Products to an Industry, U.S. Patent Application Publication No. 2002/0049622 A1 (filed Apr. 26, 2001) (published Apr. 25, 2002).

[2]    Rojek, Karen, *How Baxter Improved Data Exports*, 26 AS/400 SYS. MGMT. No. 5, at 52–53 (1998).

## BACKGROUND

### I

The '678 application is directed to logistics systems and methods for the transportation of goods from various shippers by various carriers across different modes of transport (e.g., by rail, truck, ship, or air). The logistics system connects and shares customer order information from various shippers and information about multiple carriers to provide "good visibility and management of shipments for all the parties involved." J.A. 50 ¶ 25.

The system includes databases, which store data about shippers and carriers, and component modules. The modules may use the information in the databases to allow the system to manage the transportation of goods, for example, by awarding contracts and producing reports. The specification further states that the modules are "scalable to allow functionality modules and/or software modules to be incrementally added as resources . . . permit" or as the numbers of shippers, carriers, or modes of transportation change. J.A. 53 ¶¶ 30–31.

Claim 1 is representative for the anticipation rejection and claim 3 is representative for the obviousness rejection at issue in this appeal. Claim 1 recites:

1. An integrated logistics system for managing the shipments of goods by at least one of a plurality of carriers, said system comprising:

at least one computer;

at least one database, said at least one database storing data in conjunction with at least two of a *plurality of modules*;

a network connecting said at least one computer and said at least one database; and

at least one storage device, said at least one storage device storing at least one software program, said at least one software program when executed by said at least one computer causing said integrated logistics system to operate in conjunction with said plurality of system modules,

said plurality of *modules* including:

a purchasing module evaluating proposals for respective shipments of goods and awarding contracts for the shipments [to] said one or more carriers;

a contract administration module maintaining information relating to the status of proposals received and contracts awarded by the purchasing module;

a scheduling module scheduling shipments according to the awarded contracts;

a shipment management module tracking the status of shipments awarded by the purchasing module and scheduled by said scheduling module; and

a financial module authorizing payments according to the status of shipments tracked by the shipment management module,

wherein said information relating to the status of proposals received and contracts awarded by the purchasing module is made available to said scheduling module, said shipment management module, and said financial module utilizing said at least one computer, said at least one database or said network.

J.A. 978–79 (emphases added). Claim 3, which depends from claim 1 via claim 2, recites:

> 3. An integrated logistics system according to claim 2, wherein said at least one database comprises a partitioned relational database storing collaborative data relating to shippers, freight forwarders and ship owners.

J.A. 979.

Lettich is the only prior art reference relevant to our decision. Lettich is a printed publication of a U.S. non-provisional patent application that claims priority to provisional application No. 60/200,035 filed on April 27, 2000 (the "Lettich Provisional Application"). Lettich describes a network system that integrates shipping and logistics services, operations, and products provided by multiple entities into a "one stop" site on the internet provided by a single entity to facilitate logistics operations, such as the shipping, transporting, warehousing, and distribution of products for users of the site.

## II

This is not our first case involving the '678 application. After several procedural disputes over the examination of the '678 application, including multiple appeals to this court, *see In re Riggs*, 457 F. App'x 923 (Fed. Cir. 2011) (appeal dismissed for lack of jurisdiction); *Odyssey Logistics & Tech. Corp. v. Kappos*, 435 F. App'x 954 (Fed. Cir. 2011) (appeal voluntarily dismissed), the Board heard Appellants' appeal of the Examiner's rejections in the '678 application and reversed these rejections in an April 2016 decision. In that decision, however, the Board applied an incorrect version of 35 U.S.C. § 102(e) to determine whether Lettich qualified as prior art. The Examiner recognized the Board's error and, in September 2016, filed a Request for Rehearing before the Board. Thereafter, Appellants filed a complaint in the U.S. District Court for the Eastern District of Virginia challenging, inter alia, the Request for Rehearing. *See Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1106–07 (Fed. Cir. 2020),

*abrogated on other grounds by Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024). The district court dismissed Appellants' challenge, and we affirmed. *Id.*

The Board issued its Decision on Request for Rehearing in April 2021. In its Rehearing Decision, the Board stated that it had jurisdiction over the Request under 35 U.S.C. § 6(b). The Board found that the Examiner's arguments regarding Lettich's status as prior art under § 102(e) "[we]re well taken" and amended its original decision "to determine that Lettich is proper prior art against the instant claims." J.A. 12. The Board then reviewed and affirmed the Examiner's anticipation rejection of representative claim 1 and obviousness rejection of representative claim 3 based on Lettich's disclosure.

Appellants appealed the Board's decision but, during the pendency of that appeal, we granted the U.S. Patent and Trademark Office's ("USPTO" or "PTO") motion to vacate and remand to allow the Board to address additional arguments regarding our decisions in *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375 (Fed. Cir. 2015), and *Amgen Inc. v. Sanofi*, 872 F.3d 1367 (Fed. Cir. 2017). On remand, the Board adopted its findings and reasoning in its Rehearing Decision, reviewed Appellants' arguments, and held that, because the Lettich Provisional Application provides adequate support for claim 1 of Lettich, Lettich is prior art under § 102(e) against the claims of the '678 application.

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## DISCUSSION

Appellants raise three discrete issues on appeal. First, to the extent Appellants are not estopped, whether the Board's decision to grant the Examiner's request for rehearing was ultra vires. Second, whether the Board

properly afforded Lettich the earlier filing date of its provisional application for purposes of determining that it was prior art under pre-AIA § 102(e).  And third, whether substantial evidence supports the Board's findings as to anticipation and motivation to combine.  We address the first two issues and do not reach the third.

I

Collateral estoppel, i.e., issue preclusion, applies when "(1) a prior action presents an identical issue; (2) the prior action actually litigated and adjudged that issue; (3) the judgment in that prior action necessarily required determination of the identical issue; and (4) the prior action featured full representation of the estopped party."  *VirnetX Inc. v. Apple Inc.*, 909 F.3d 1375, 1377 (Fed. Cir. 2018) (quoting *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640, 644 (Fed. Cir. 2012)).  Here, we agree with the Government that Appellants are estopped from arguing that the Board acted ultra vires by our prior decision, *Odyssey Logistics*, 959 F.3d 1104.  Each of the four elements above supports the application of issue preclusion and Appellants advance no persuasive reason why they should not be estopped.  We address the four elements out of order—starting with the fourth element before proceeding to the first, second, and third elements.

As for the fourth element, full representation, Odyssey Logistics & Technology Corp., the Appellant in *Odyssey Logistics*, is the real party in interest here.  In the Certificate of Interest for the present appeal, Appellants state that Odyssey Logistics & Technology Corp. is the real party in interest.  Certificate of Interest for Appellants, ECF No. 24; Appellants' Br. Certificate of Interest ("The full name of the real party in interest:  Odyssey Logistics & Technology Corporation.").  Thus, we are satisfied that Odyssey's interests were fully represented.

Turning to the first and second elements, an identical issue actually litigated and adjudged, Appellants

previously presented and litigated the same argument—that the Board lacked jurisdiction to decide the Examiner's request for rehearing—before the Board, the district court, and our court. *See Odyssey Logistics*, 959 F.3d at 1108–10. The precise issue before this court in *Odyssey Logistics* was whether Odyssey satisfied the Administrative Procedure Act's finality requirement, *see* 5 U.S.C. § 704, for judicial review of its challenge to the Examiner's request for rehearing. *Odyssey Logistics*, 959 F.3d at 1108. As part of its challenge, Odyssey argued that "the rehearing proceedings are an ultra vires action by the PTO." *Id.* at 1109. This court disagreed. *Id.* at 1109–10. On the merits, our court concluded that an examiner's request for rehearing of a Board decision as outlined in Manual of Patent Examining Procedure ("MPEP") § 1214.04 "is ordinary agency action," not "an *ultra vires* action by the PTO" after the Board's original decision. *Odyssey Logistics*, 959 F.3d at 1109. Indeed, the court determined that "the Board may reconsider its decision when the examiner requests rehearing." *Id.* In reaching this conclusion, the court addressed the same arguments that Appellants advance here.

First, as Odyssey argued before us in *Odyssey Logistics*, Appellants here still argue that "the rehearing proceedings are an *ultra vires* action by the PTO," *id.*, because "the Examiner does not have the right to unilaterally invoke, or more accurately, re-invoke the Board's jurisdiction over an *ex parte* appeal after it has ended." Appellants' Br. 29. In *Odyssey Logistics,* we rejected this argument and explained that the rehearing process is "ordinary agency action" because "[i]ssuing a request for rehearing under MPEP [§] 1214.04," as the Examiner did here, "simply makes use of the Director's authority over the examination process under 35 U.S.C. §§ 131, 132." *Odyssey Logistics*, 959 F.3d at 1110. Second, Odyssey previously argued, and Appellants continue to argue here, that the procedure to request a rehearing under MPEP § 1214.04 "cannot apply because the [E]xaminer's request for

rehearing did not occur within 63 days, and, according to [Appellants], the Board loses jurisdiction 63 days after it issues its final decision, and these regulations must supersede PTO procedural guidelines from the MPEP." *Id.* at 1109–10 (citing Odyssey's Reply Br. (which in turn cited 37 C.F.R. §§ 41.52, 41.35(b)(2))); *see* Appellants' Br. 28–29. But none of the cited regulations "constrict the [USPTO's] time to request rehearing; they instead bind the patent *applicant*." *Odyssey Logistics*, 959 F.3d at 1110 (emphasis added). Appellants also attempt to argue that the USPTO's reading of its regulations should not be afforded deference under *Auer v. Robbins*, 519 U.S. 452 (1997), or *Kisor v. Willkie*, 588 U.S. 558 (2019), because the regulations are not genuinely ambiguous. Appellants' Br. 29–34. This argument, like Appellants' other arguments, misses the mark. In *Odyssey Logistics*, we made determinations regarding the Board's jurisdiction based on the plain and unambiguous language of the relevant regulations. *Odyssey Logistics*, 959 F.3d at 1109–10. Last, as they did in the prior appeal, Appellants assert "they will be quite prejudiced if they should succeed in this appeal but a patent is nevertheless not promptly issued," Appellants' Br. 36, implying that they will have lost valuable patent term due to the Board's action. But this assertion overlooks the fact that any delay due to appeals at the PTO will result in an adjusted term based on the patent term adjustment statute. *See* 35 U.S.C. § 154(b). Therefore, any concern of prejudice is unfounded.

Appellants' primary response to issue preclusion is that the pertinent analysis in *Odyssey Logistics* is dicta because the main issue there concerned the finality of the agency's action, not whether the Board had jurisdiction to decide the Examiner's request for rehearing. We are not persuaded. Questions regarding the propriety of the Board's actions and whether those actions were final are intertwined and required resolution. Indeed, as part of its finality challenge in *Odyssey Logistics*, Odyssey argued

that the rehearing proceedings were an ultra vires action by the PTO. If the court in *Odyssey Logistics* had concluded that Board's actions were ultra vires, the question of finality would be moot. And the district court could grant appropriate equitable relief. *See, e.g.*, *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958). Conversely, had we concluded in *Odyssey Logistics* that the Board's actions were not ultra vires (as we did), the Board's decision to proceed with the rehearing request resolved the looming question as to whether the Board's actions were final (they would not be final) because "[t]he reconsideration process is the last stop on the PTO's path to a final disposition." *Odyssey Logistics*, 959 F.3d at 1109.

As for the third element of issue preclusion, whether judgment in the prior action necessarily required determination of an identical issue, as we explained above, our prior determination that the Board had jurisdiction over the Examiner's request for rehearing was "necessarily required" to resolve whether the Board's actions were final under the Administrative Procedure Act. *VirnetX*, 909 F.3d at 1377. Issue preclusion therefore applies, and Appellants are estopped from arguing that the Board acted ultra vires.

## II

We now address the Board's determination that Lettich qualifies as prior art under pre-AIA 35 U.S.C. § 102(e).

Lettich is a published non-provisional application that was filed on April 26, 2001, and claims priority to a provisional application filed on April 27, 2000. The '678 application was filed on December 7, 2004, and claims priority to July 28, 2000. There is no dispute that Lettich is a published non-provisional application that properly claims priority to the Lettich Provisional Application. Thus, whether Lettich qualifies as prior art under pre-AIA § 102(e) turns on whether Lettich is entitled to the priority date of the provisional application.

Here, the Examiner and the Board relied on *Dynamic Drinkware*, *Amgen*, and MPEP § 2136.03[3] to conclude that "*at least one claim* in the Lettich Application Publication must find written description support in the Lettich Provisional Application in order for the Lettich Application Publication to be prior art against the instant claims." J.A. 35; *see also* J.A. 34 (citing *Dynamic Drinkware*, 800 F.3d at 1382; *Amgen*, 872 F.3d at 1380). Applying this test, the Board identified corresponding support in the Lettich Provisional Application for each limitation of Lettich non-provisional application published claim 1. *See* J.A. 35–38.[4]

---

[3]   MPEP § 2136.03 provides:

The critical reference date under pre-AIA 35 U.S.C. 102(e) of a U.S. patent, a U.S. patent application publication, as well as an international application publication having prior art effect under pre-AIA 35 U.S.C. 102(e), may be the filing date of a relied upon provisional application only if at least one of the claims in the reference patent, patent application publication, or international application publication is supported by the written description of the provisional application in compliance with pre-AIA 35 U.S.C. 112, first paragraph, or 35 U.S.C. 112(a).

MPEP § 2136.03 III (9th ed., Rev. 01.2024, Nov. 2024) (citations omitted). Additionally, the MPEP requires that "[t]he provisional application must also describe, in compliance with pre-AIA 35 U.S.C. 112, first paragraph, or 35 U.S.C. 112(a), the subject matter relied upon in the reference patent or publication to make the rejection." *Id.*

[4]   We requested supplemental briefing to address whether the law applied by the Board—requiring at least one of the claims in the reference patent application publication be supported by the written description of the

While we have explained that a prior art patent or published application cannot be accorded the benefit of its provisional application's filing date absent a showing that the provisional application provides support for the claims of the patent or published application, *Dynamic Drinkware*, 800 F.3d at 1381–82; *Amgen*, 872 F.3d at 1380, we have not addressed the scenario at issue here. Specifically, we have not addressed whether the Board's test is sufficient where, as here, the Examiner (or any party challenging the validity of a patent) demonstrated support for one claim and then relied on other portions of the specification (e.g., the Summary of the Invention or Detailed Description, or even other claims) to support its rejection. We conclude it is not. Even if one demonstrates that a provisional application provides written description support for one claim of the non-provisional application or patent, the provisional application must also provide written description support for the specific portions of the patent specification identified and relied on in the prior art rejection. In other words, to claim priority to the provisional filing date, the portion of the application relied on by the examiner as prior art must be supported by the provisional application. It makes no sense to suggest that if a single claim is supported by the provisional application, then everything in the later filed application gets the benefit of the provisional date whether supported or not. As explained below, this additional requirement is both logical and consistent with our

---

provisional application in compliance with pre-AIA 35 U.S.C. § 112, first paragraph—was correct. ECF No. 67 at 2. We asked the parties to "consider whether it is appropriate to require that 'at least one claim,' all claims, or only the subject matter (e.g., a paragraph in the specification) relied on to reject the claims at issue have support in the provisional application in order to qualify as prior art as of the provisional priority date." *Id.*

precedent. Additionally, it is consistent with MPEP § 2136.03 (*see supra* note 3).

Provisional applications become public when the corresponding non-provisional application publishes or the patent issues. *See* 37 C.F.R. § 1.14(a)(1)(iv)–(vi); Appellee's Suppl. Br. 8. As such, it is best to treat a published provisional application—like a published non-provisional application or patent—as prior art for all that it teaches as of its filing date.

In both *Dynamic Drinkware* and *Amgen*, the appellants failed to demonstrate that the respective provisional applications provided written description support for the patent claims. *Dynamic Drinkware*, 800 F.3d at 1381–82 ("Nowhere, however, does [appellant] demonstrate support in the Raymond provisional application for *the claims of the Raymond patent*. That was [appellant]'s burden. A provisional application's effectiveness as prior art depends on its written description support for the claims of the issued patent of which it was a provisional. [Appellant] did not make that showing." (emphasis added)); *Amgen*, 872 F.3d at 1380 ("Here, [a]ppellants challenged the district court's application of *Dynamic Drinkware*, but did not proffer any evidence showing that the provisional applications . . . satisfy the written description requirement for the [subject matter] claimed in the [reference application]."). As such, we did not address the subsequent issue of whether the content of the prior art relied on in the rejection also required written description support in the provisional application.

Here, it appears the Board interpreted *Dynamic Drinkware* and *Amgen* to mean that if a single claim in the prior art published non-provisional application is adequately supported by the written description of the provisional application, then the filing date of the provisional applies *carte blanche* to the prior art published application, irrespective of whether the cited content in the prior art

published application was adequately supported by the written description of the provisional application. We disagree with this approach. A reference constitutes prior art for all that it teaches as of its earliest accorded filing date. A reference does not constitute prior art for all that it teaches as of its provisional application's filing date solely because a particular claimed invention—which most often does not specify everything in the written description—is adequately supported by the provisional application.

In its supplemental brief, the USPTO asserts that the Board in this case "determine[d] that the disclosure of the Lettich Provisional Application provides proper support for claim 1 of the Lettich Application Publication, *as well as for the subject matter in the Lettich Application Publication relied on in the rejection.*" Appellee's Suppl. Br. 4 (emphasis added) (citing J.A. 29–30, 33–38). We agree that the Board found support in the Lettich Provisional Application for each limitation of Lettich non-provisional application claim 1, *see* J.A. 35–38, and we conclude that substantial evidence supports these findings. But we disagree that the Board addressed whether the disclosure of the Lettich Provisional Application provides support for the subject matter in Lettich that the Examiner relied on in the rejection. The Board noted that the Examiner determined which portions of Lettich were supported by the Lettich Provisional Application, but the Board did not review the Examiner's findings in this regard. J.A. 29–30. Because the Board did not, in the first instance, complete this analysis as to whether Lettich qualifies as prior art under pre-AIA 35 U.S.C. § 102(e), we vacate and remand for the Board to determine whether the Lettich Provisional Application provides written description support for the specific disclosures in Lettich that the Examiner identified and relied on in the prior art rejections.

We are not persuaded by Appellants other arguments for why Lettich is allegedly not entitled to the priority date of the provisional application. First, Appellants assert that

"[t]he system of Lettich claim 1 is described in paragraphs 30–34 and enabled at paragraphs 165–175 of the Lettich non-provisional application[,]" but "[t]hese paragraphs of the Lettich non-provisional application do not appear in the provisional application and there are no other parts of the provisional application that fully describe <u>and enable</u> claim 1." Appellants' Br. 20–21. Appellants explain, "[t]here is not even any effort in the *Dynamic Drinkware* [discussion in] the [Board] Decision on Remand to show that claim 1 of the Lettich non-provisional application is enabled by the provisional application." *Id.* at 21. Contrary to Appellants' assertion, the Board does provide analysis on whether the provisional application is enabling. *See* J.A. 32–33. Appellants' problem before the Board, and here, is that they present only attorney argument and "d[id] not provide any factual evidence to support its arguments that Lettich's provisional application is non-enabling." J.A. 33. Attorney argument "is not evidence and cannot rebut other admitted evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1359 (Fed. Cir. 2018) (internal quotation marks and citation omitted). And a party's position that is based on attorney argument rather than record evidence does not undermine substantial evidence that supports the Board's findings. *See Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1342 (Fed. Cir. 2020).

We are also not persuaded by Appellants' argument that the Intellectual Property and High Technology Technical Amendments Act of 2002 ("TAA"), Pub. L. 107–273, 116 Stat. 1758, does not apply retroactively to the '678 application. The Examiner and the Board correctly recognized that pre-AIA § 102(e), as revised by the TAA, applies to all patents and applications pending on, or filed after, November 29, 2000—i.e., it applies to all existing applications. This is clear from the effective date language in the TAA itself, which states that the amendments shall apply "to any pending application filed before November 29,

2000." Pub. L. 107–273, 116 Stat. at 1903. Here, because the '678 application was pending at the time the TAA went into effect, the plain language of the TAA controls.

## CONCLUSION

We have considered Appellants' remaining arguments and do not find them persuasive. For the reasons above, we vacate the Board's decision as to whether Lettich qualifies as prior art under 35 U.S.C. § 102(e) and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**

### COSTS

No costs.