# United States Court of Appeals for the Federal Circuit

---

**ALARM.COM INCORPORATED,**
*Plaintiff-Appellant*

**v.**

**ANDREW HIRSHFELD, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE, UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*

---

2021-2102

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:21-cv-00170-CMH-TCB, Senior Judge Claude M. Hilton.

---

Decided:  February 24, 2022

---

SHARONMOYEE GOSWAMI, Cravath Swaine & Moore LLP, New York, NY, argued for plaintiff-appellant.

KEVIN BENJAMIN SOTER, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees.  Also represented by BRIAN

M. BOYNTON, DANIEL TENNY. JESSICA D. ABER, Office of the United States Attorney for the Eastern District of Virginia, United States Department of Justice, Alexandria, VA; SARAH E. CRAVEN, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, MEREDITH HOPE SCHOENFELD, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

———————————

Before TARANTO, CHEN, and CUNNINGHAM, *Circuit Judges.*

TARANTO, *Circuit Judge.*

In 2015, Alarm.com Incorporated filed petitions in the Patent and Trademark Office (PTO or Patent Office) seeking inter partes reviews (IPRs) under 35 U.S.C. §§ 311–19 of claims of three patents owned by Vivint, Inc. The IPRs were instituted, and the PTO's Patent Trial and Appeal Board in 2017 issued three final written decisions, which rejected Alarm.com's challenges to certain claims, a rejection that we affirmed on appeal in late 2018. In mid-2020, Alarm.com filed with the PTO three requests for ex parte reexamination of those very claims under 35 U.S.C. §§ 301–07. The PTO's Director, without deciding whether the requests presented a "substantial new question of patentability," § 303(a), vacated the ex parte reexamination proceedings based on the estoppel provision of the IPR regime, § 315(e)(1), which, the Director concluded, estopped Alarm.com from pursuing the requests once the IPRs resulted in final written decisions.

Alarm.com sought review of the Director's vacatur decisions in district court under the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(2)(A), (C). The district court dismissed Alarm.com's complaint on the ground that APA review of the Director's decision was precluded by the ex parte reexamination scheme viewed as a whole. *Alarm.com Inc. v. Hirshfeld*, No. 1:21-cv-170, 2021 WL

2557948 (E.D. Va. June 22, 2021).  On Alarm.com's appeal, we reverse.

I

A

Congress created the ex parte reexamination regime in 1980 by adding sections 301 through 307 to Title 35, U.S. Code.  Public Law No. 96-517, § 1, 94 Stat. 3015, 3015–17 (1980).  Under the statute, as amended, "[a]ny person at any time may cite to the [PTO] in writing" certain prior art "which that person believes to have a bearing on the patentability of any claim of a particular patent," 35 U.S.C. § 301(a)(1), as well as certain patent owner statements, § 301(a)(2).  And "[a]ny person at any time may file a request for reexamination . . . of any claim of a patent on the basis of any prior art cited under [§ 301]."  § 302; *see also* 37 C.F.R. § 1.510.  Normally, "[w]ithin three months following the filing of a request for reexamination . . . , the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request."  § 303(a).  If the Director determines "pursuant to [§ 303(a)] that no substantial new question of patentability has been raised," that determination "will be final and nonappealable."  § 303(c).  If, however, "the Director finds that a substantial new question of patentability affecting any claim of a patent is raised, the determination will include an order for reexamination of the patent for resolution of the question."  § 304.

After a reexamination is ordered, the patent owner "may file a statement on [the substantial new question of patentability identified by the Director], including any amendment to his patent and new claim or claims he may wish to propose, for consideration in the reexamination."  *Id.*  If the patent owner files such a statement, he must serve a copy of it "on the person who has requested reexamination," who, in turn, "may file and have considered in the reexamination a reply."  *Id.*  The statute does not

provide for any involvement of the requester in the reexamination after the optional reply.  *See* § 305; *see* 37 C.F.R. § 1.550(g) ("The active participation of the *ex parte* reexamination requester ends with the reply . . . and no further submissions on behalf of the reexamination requester will be acknowledged or considered.").  The reply aside, the reexamination is "conducted according to the procedures established for initial examination" of patent applications. § 305.  Once the reexamination is completed, "[t]he patent owner . . . may appeal . . . any decision adverse to the patentability of any original or proposed amended or new claim of the patent" to the Patent Trial and Appeal Board; and if unsuccessful at the Board, the patent owner may appeal to this court.   § 306; §§ 134(b), 141(b); 37 C.F.R. § 90.3(a).

One other provision is central to the issue presented to us—one of the two estoppel provisions of the IPR scheme set out in chapter 31 of Title 35, U.S. Code.  The provision at issue here is § 315(e)(1), which states:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the [PTO] with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(1).  A similar provision, not at issue here, provides for estoppel, on similar terms, of specified civil actions and other proceedings.  § 315(e)(2).

B

In 2015, Vivint, Inc. sued Alarm.com for infringement of three patents, U.S. Patent Nos. 6,147,601, 6,462,654, and 6,535,123, in the District Court for the District of Utah. *See* Complaint at 5–10, *Vivint, Inc. v. Alarm.com Inc.*,

No. 2:15-cv-00392 (D. Utah June 2, 2015), ECF No. 2.  In response, Alarm.com filed numerous petitions for inter partes reviews, which resulted in three final written decisions in 2017, all of which were reviewed by this court in *Vivint, Inc. v. Alarm.com Inc.*, 754 F. App'x 999 (Fed. Cir. 2018).  As relevant here, we affirmed the Board's determination that Alarm.com had not carried its burden of proving unpatentable claim 19 of the '601 patent, claim 18 of the '123 patent, and claims 17, 18, 22, 25, and 28 of the '654 patent.  *Id.* at 1006–07 & n.7.

Nevertheless, in June 2020, Alarm.com filed three requests for ex parte reexamination of those very claims under 35 U.S.C. § 302 and 37 C.F.R. § 1.510, presenting grounds that differed from the grounds it had presented in the IPRs.  J.A. 109–97 ('601 request); J.A. 199–318 ('123 request); J.A. 320–546 ('654 request).  The PTO initially assigned control numbers and filing dates to the requested reexamination proceedings.  But on August 7, 2020, the Office of Patent Legal Administration—which we call the Director[1]—issued three decisions vacating the proceedings instead of making § 303(a) determinations on the presence of substantial new questions of patentability.  J.A. 45–67 ('601 decision); J.A. 69–90 ('123 decision); J.A. 92–107 ('654 decision).

In each decision, the Director focused on the certification Alarm.com had submitted under 37 C.F.R. § 1.510(b)(6), which requires that a reexamination request include "[a] certification by the third party requester that the statutory estoppel provisions of 35 U.S.C. [§] 315(e)(1) . . . do not prohibit the requester from filing

---

[1]     Alarm.com states in its APA complaint that the Office of Patent Legal Administration was "acting on behalf of the Director," J.A. 15, and it has not contested the existence or validity of the Director's delegation of authority.

the ex parte reexamination request."[2]    The Director set
forth a "Clarification of General Policy and Practice" for ap-
plying § 315(e)(1)'s estoppel precondition that a particular
ground of unpatentability asserted against a particular
claim be one that was "raised or reasonably could have
[been] raised" in the prior IPR involving the same claim
(where the reexamination requester was the IPR peti-
tioner, or a real party in interest or privy of the IPR peti-
tioner).  *See*, *e.g.*, J.A. 55–57.  Applying the statute and the
General Policy, the Director found that Alarm.com reason-
ably could have raised its reexamination grounds in the
IPRs and so was estopped under § 315(e)(1) from submit-
ting each of its ex parte reexamination requests, a conclu-
sion that made the certifications under 37 C.F.R. § 1.510
incorrect.  *See*, *e.g.*, J.A. 52–65.  On that basis, the Director
vacated the filing dates of each request, as well as each pro-
ceeding as a whole.  *See*, *e.g.*, J.A. 65–66 (citing 37 C.F.R.
§ 1.510(d); MPEP § 2227(b)).  The Director did not conclude
that Alarm.com's requests failed to raise a "substantial
new question of patentability."  *See* § 303(a).

On February 12, 2021, Alarm.com filed a complaint in
the United States District Court for the Eastern District of
Virginia against the Director, in his official capacity, and
the PTO.  Alarm.com filed its complaint under the APA,
which provides that "[a] person suffering legal wrong be-
cause of agency action, or adversely affected or aggrieved
by agency action within the meaning of a relevant statute,
is entitled to judicial review thereof."  5 U.S.C. § 702.
Alarm.com asserted that the Director's three decisions va-
cating each ex parte reexamination proceeding were final
agency actions and were unlawful and should be set aside

---

[2]    The regulation also requires certification regarding
35 U.S.C. § 325(e)(1), which is the estoppel provision of the
scheme for post-grant reviews set out in chapter 32 of Title
35, U.S. Code.  That provision is not at issue here.

because the actions or underlying findings or conclusions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A), and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," § 706(2)(C). *See* J.A. 16, 38–42. In its prayer for relief, Alarm.com also requested a permanent injunction preventing the PTO from applying the General Policy "to grounds presented in any future requests or petitions." J.A. 43.

The government moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. First, the government argued that Alarm.com's APA claims come within 5 U.S.C. § 701(a)(1), which creates an exception to APA review where "statutes preclude judicial review." Memorandum of Law in Support of Defendants' Motion to Dismiss at 2, 10–17, *Alarm.com Inc. v. Hirshfeld*, No. 1:21-cv-170 (E.D. Va. Apr. 23, 2021), ECF No. 19 (also citing §§ 702 and 703 as providing support for preclusion). Second, the government argued that Alarm.com lacked standing to seek an injunction against application of the PTO's general policy and practice "to grounds presented in any future requests or petitions before the Patent Office." *Id.* at 2, 17–18 (citation omitted).

On June 22, 2021, the district court entered an order dismissing Alarm.com's suit. The court reasoned that review of Alarm.com's challenge to the vacatur decisions based on estoppel was precluded by the ex parte reexamination statutory scheme. *Alarm.com*, 2021 WL 2557948, at *2–3. And the court concluded that Alarm.com lacked standing to the extent it was seeking broad prospective relief against the General Policy, since "[t]he agency action that allegedly harmed [Alarm.com] was the denial of the ex parte reexamination, not the issuance of the policy." *Id.* at

*3. The district court therefore dismissed for lack of jurisdiction.[3]

Alarm.com timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). The only issue we decide is the reviewability of the three specific vacatur rulings, an issue that presents a substantial question of patent law and therefore is governed by our own law, rather than regional circuit law. *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020). We decide the propriety of the district court's dismissal here, which presents only a legal question, de novo. *Id.*

II

The district court concluded, and the government argues on appeal, that the overall ex parte reexamination scheme precludes judicial review of the Director's vacatur decisions based on 35 U.S.C. § 315(e)(1) estoppel, bringing Alarm.com's challenge to those decisions within the exception to APA review applicable where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The government does not contend that judicial review under the APA is unavailable because the agency actions in question are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see* Oral Arg. at 26:55–28:08. Nor does the government present any developed argument that APA review is unavailable because there are "other adequate remed[ies] in . . . court,"

---

[3]    The preclusion-of-review conclusion entailed lack of jurisdiction because, if APA review is unavailable due to statutes precluding review, the APA's waiver of sovereign immunity does not apply, and without an applicable waiver of sovereign immunity, no jurisdiction exists to entertain the challenge. *See*, *e.g.*, *Brownback v. King*, 141 S. Ct. 740, 749 (2021); *United States v. Mitchell*, 463 U.S. 206, 212, 215 (1983); *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir. 1984).

5 U.S.C. § 704, whether because of the availability of mandamus review under 28 U.S.C. § 1651 or otherwise.

When determining whether a statute precludes judicial review, we apply a "'strong presumption' in favor of judicial review." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)); *see also SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018). Although a statute need not explicitly state that judicial review is unavailable for preclusion to be found, the presumption of reviewability may be overcome only by "clear and convincing indications, drawn from specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole, that Congress intended to bar review." *Cuozzo*, 579 U.S. at 273 (cleaned up); *see also SAS*, 138 S. Ct. at 1359; *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 671–73 (1986). In *Block v. Community Nutrition Institute*, the Supreme Court explained:

> In the context of preclusion analysis, the "clear and convincing evidence" standard is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling. That presumption does not control in cases . . . [where] the congressional intent to preclude judicial review is "fairly discernible" in the detail of the legislative scheme.

467 U.S. 340, 351 (1984); *see also Kucana v. Holder*, 558 U.S. 233, 251–52 (2010).

Under those standards, we conclude, Alarm.com's APA challenge to the Director's vacatur decisions based on estoppel is not precluded. The text, statutory scheme, and legislative history pertaining to ex parte reexamination do not evince a fairly discernable intent to preclude judicial review of these decisions.

A

The only portion of the ex parte reexamination statutory scheme that expressly precludes judicial review is § 303(c), but the preclusion established by that text is narrowly defined.  The provision states: "A determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable."  § 303(c).  The government agrees that "section 303(c) . . . concededly does not expressly bar Alarm.com's challenge."  Gov't Br. 39.  The Director's estoppel determinations did not include any determination that no substantial new question of patentability had been raised.  The estoppel determinations made under § 315(e)(1) here are outside the scope of § 303(c).  The sole express textual preclusion in the ex parte reexamination scheme does not support preclusion here.

The Supreme Court has called attention to the fact that § 303(c) is limited in scope, contrasting it with the broader preclusion provision of the IPR scheme.  In *Thryv, Inc. v. Click-to-Call Technologies, LP*, the Court addressed whether § 314(d)—which states that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable"—bars judicial review of the Director's decision to institute an IPR when that decision is challenged as contrary to § 315(b)'s time prescription.  140 S. Ct. 1367, 1370 (2020).  The Court held that § 314(d) does preclude such review, because the timing issue comes within the standard previously adopted in *Cuozzo*—that an issue be "closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."  *Id.* at 1373 (quoting *Cuozzo*, 579 U.S. at 275).  In so holding, the Court relied on the contrast between § 314(d)'s broad language and the narrower language of § 303(c).  *Id.* at 1375–76 (stating that in § 314(d) "Congress chose to shield from appellate review the determination 'whether *to institute an inter partes*

*review* under *this section*'" and "[t]hat departure in language suggests a departure in meaning").

The Supreme Court in *Thryv* rejected this court's contrary view about § 314(d) and the IPR timing rule it set forth in *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) (en banc). *See Thryv*, 140 S. Ct. at 1372, 1375 (discussing *Wi-Fi One*). Notably, the dissenters in *Wi-Fi One* stressed the limited scope of § 303(c), expressly concluding that it "specifically bars review of the narrow issue of whether the request raises a 'substantial new question of patentability' [and] . . . *does not* bar review of the entire decision to initiate reexamination." 878 F.3d at 1380–81 (Hughes, J., dissenting, joined by Lourie, Bryson, and Dyk, JJ.). More recently, in *In re Vivint, Inc.*, we noted two other limits on the scope of § 303(c), stating that the provision "does not apply to a determination that a substantial new question of patentability *has* been raised" and "does not apply to a determination under 35 U.S.C. § 325(d)." 14 F.4th 1342, 1350 n.5 (Fed. Cir. 2021). Section § 325(d) permits the Director, when "determining whether to institute or order" ex parte reexaminations (among other proceedings), to "take into account whether, and reject the . . . request because, the same or substantially the same prior art or arguments previously were presented to the [Patent] Office." In *In re Vivint* we both concluded that § 325(d) decisions are outside § 303(c) and rejected the government's submission that such decisions are committed to the agency's discretion and hence unreviewable under 5 U.S.C. § 701(a)(2). 14 F.4th at 1350–51.

We conclude that § 303(c) does not apply to the estoppel decisions at issue here. Such an application would breach the provision's textual limits and would be contrary to the just-discussed decisions addressing § 303(c). It also would run counter to precedents adhering to the textual limits of other non-reviewability provisions in Title 35. *See SAS*, 138 S. Ct. at 1359–60 (holding that § 314(d) did not bar review of consistency of Board's policy of partial institutions

with § 318(a), where the challenge was to how the Board acts once an IPR is instituted, not to the institution decision itself); *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1025–27 (Fed. Cir. 2021) (holding that § 314(d) does not bar review of estoppel determinations under § 315(e)(1) based on post-institution events); *In re AT&T Intellectual Property II, L.P.*, 856 F.3d 991, 995–96 (Fed. Cir. 2017) (holding that the non-reviewability provision of the pre-IPR inter partes reexamination scheme did not apply to the issue of whether institution was improper in the absence of a requester or request, where the non-reviewability provision applied only to the Director's determination of "whether 'the information presented in the request shows that there is a reasonable likelihood that the requester would prevail with respect to at least 1 of the claims challenged in the request'" (quoting 35 U.S.C. §§ 312(a), (c) (version effective between Sept. 16, 2011, and Sept. 15, 2012))); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1049–51 (Fed. Cir. 2017) (holding that, under the now-expired scheme for covered business method patents, § 324(e) did not bar review of post-institution estoppel determinations under § 325(e)(1)).

B

The government argues that the ex parte reexamination scheme as a whole clearly demonstrates a congressional intent to deprive requesters like Alarm.com of all rights of judicial review, an intent that would include barring review of the Director's application of § 315(e)(1). The government stresses that Congress specified *what* can be reviewed (only decisions adverse to patentability in an ordered reexamination proceeding, § 306), *who* can seek judicial review (only patent owners, *id.*), *where* judicial review can be sought (only in this court following an appeal to the Board, §§ 134(b), 141(b)), and *when* (within the time allowed by PTO regulations (63 days of the Board decision), § 142; 37 C.F.R. § 90.3(a)). *See* Gov't Br. 23–27. Those provisions, the government contends, implicitly preclude

judicial review of any kind if sought by the requester when the requester is not the patentee.  In answer to the question of why § 303(c) exists if such an inference from the rest of the scheme is clear, the government assigns the provision a belt-and-suspenders role for Director denials of non-patentee requests when the denials are on no-new-substantial-question grounds (though not otherwise) and also a role in denying review when the requester is the patentee. *See, e.g.*, Gov't Br. 37.

We reject the government's argument that this statutory scheme is one that clearly and convincingly establishes non-reviewability in the respect at issue.  At bottom, the government urges that the scheme precludes a requester from obtaining review of a determination outside § 303(c)'s express terms (*i.e.*, a determination not to launch an ex parte reexamination for reasons other than the lack of a substantial new question of patentability) simply because § 306 and its associated provisions affirmatively grant only to patent owners a right to review of a different determination (*i.e.*, a decision adverse to patentability in an ordered reexamination proceeding).  This basis is insufficient to overcome the presumption of reviewability as a matter of recognized principle and precedent.

The principle was expressed by the Supreme Court in *Sackett v. EPA* when it said: "[I]f the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all."  566 U.S. 120, 129 (2012); *see also Bowen*, 476 U.S. at 674 ("The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." (cleaned up)).[4]  And

---

[4]    *See also Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1112 n.2 (D.C. Cir. 1994); *Alameda County v. Weinberger*, 520 F.2d 344, 347–48 (9th Cir.

the principle is especially strong where Congress has affirmatively included a bar on review of certain determinations and that express bar does not encompass the determination in question (as is true of § 303(c), *see supra* Section II.A). *See Texas v. United States*, 787 F.3d 733, 755–56 (5th Cir. 2015) ("The [Immigration and Nationality Act] has numerous specific jurisdiction-stripping provisions that would be rendered superfluous by application of an implied, overarching principle prohibiting review.").

The cases on which the government relies do not support the inference it asks us to draw in the present case. First, in *United States v. Erika*, the Court held that the Medicare statute, which expressly provided for judicial review of awards under Part A, implicitly precluded review of awards under Part B, because there was a strong enough parallel between Part A and Part B that the lack of a review provision for Part B awards was meaningful. 456 U.S. 201, 206–08 (1982); *see also Sackett*, 566 U.S. at 130 (characterizing *Erika*). Here, there is no sufficient parallelism between a decision about the initiation of an ex parte reexamination and the ultimate decision in the reexamination itself, which are distinct decisions relating to distinct phases of the reexamination proceeding. *See* Gov't Br. 28; *supra* Section I.A. As a result, *Erika*'s reasoning does not support the preclusion of judicial review of decisions relating to the initiation of an ex parte reexamination (beyond what is precluded by § 303(c)) simply because review rights were granted (in limited circumstances) for the ultimate decision in the reexamination under § 306.

Second, in *Block*, the Court held that the Agricultural Marketing Agreement Act of 1937, which expressly allowed milk *handlers* to obtain judicial review of milk market

1975); *Consolidated-Tomoka Land Co. v. Butz*, 498 F.2d 1208, 1210 (5th Cir. 1974); *Artichoke Joe's v. Norton,* 216 F. Supp. 2d 1084, 1113 (E.D. Cal. 2002).

orders, implicitly precluded milk *consumers* from obtaining said review of milk market orders.  467 U.S. at 345–52. But, as explained in *Sackett*, *Block* stands only for the proposition that when a "*particular agency action* is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not *subject* to the administrative process, is strong."  566 U.S. at 129–30 (first emphasis added; second emphasis in original); *see also Block*, 467 U.S. at 349.  Here, the "particular agency action" governed by §§ 306, 134(b), and 141(b) is the ultimate decision reached after an initiated ex parte reexamination has been conducted.  *Block* at most supports the conclusion that those provisions implicitly preclude requesters from seeking judicial review of *that particular agency action.  See Syntex (U.S.A) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1573–75 (Fed. Cir. 1989). *Block* does not support the conclusion that by granting only to patent owners review of the ultimate decision of the reexamination in § 306, Congress additionally precluded requesters from seeking review of decisions relating to the initiation of an ex parte reexamination beyond those covered by § 303(c).

Third, in *United States v. Fausto*, the Court held that the Civil Service Reform Act (CSRA), which excluded certain "nonpreference eligible" employees from the statute's Merit Systems Protection Board (MSPB) and Federal Circuit review scheme, also implicitly precluded the same nonpreference-eligible employees from seeking review through a separate action in the United States Claims Court for "the type of personnel action covered" by the CSRA.  484 U.S. 439, 447–49 (1988).  *Fausto* cannot support preclusion here.  Like *Block*, *Fausto* could at most suggest, for the ex parte reexamination scheme, that because requesters are excluded from §§ 306, 134(b), and 141(b), they cannot invoke extrastatutory processes to obtain review of the ultimate decision reached after the full reexamination.

*Fausto*, like *Block*, does not suggest that §§ 306, 134(b), and 141(b) imply nonreviewability of decisions relating to the initiation of an ex parte reexamination.

Fourth, and finally, in *Elgin v. Department of the Treasury*, the Court, again interpreting the CSRA, held that because the CSRA spells out an MSPB and Federal Circuit review scheme in "painstaking detail" for certain covered employees, those covered employees are implicitly precluded from seeking extrastatutory review. 567 U.S. 1, 10–16 (2012); *cf. Block v. North Dakota*, 461 U.S. 273, 285–86 (1983) (similar). Applied to the ex parte reexamination statutory scheme, *Elgin*'s reasoning suggests at most that *patent owners* cannot resort to paths outside those of §§ 306, 134(b), and 141(b) to obtain review of decisions adverse to patentability reached in an initiated ex parte reexamination. But beyond its characterization of cases like *Fausto*, *Elgin* does not shed light on what implications may be drawn for the review rights of *other* interested persons like requesters. Moreover, to the extent the government contends that we can draw *Elgin*-like preclusion implications from (1) the "opportunity to obtain a judicial determination of whether estoppel applies in [a] related context" under § 315(e)(2) and (2) mandamus relief potentially available to requesters under 28 U.S.C. § 1651, *see* Gov't Br. 40–41, we disagree. Although § 315(e)(2) permits a court to conduct a similar estoppel inquiry (to bar *court* actions after IPRs) as the one the PTO conducts under § 315(e)(1) (to bar *agency* proceedings after IPRs), § 315(e)(2) does not provide ex parte reexamination requesters with a mechanism for review of agency determinations under § 315(e)(1). And inferring statutory preclusion not from the ex parte reexamination statutory scheme, but only from the availability of mandamus relief, would eviscerate the presumption of reviewability.

When we turn from Supreme Court decisions to decisions of our court, we likewise find no persuasive support for the conclusion that the ex parte reexamination

statutory scheme precludes requesters from seeking review of decisions like the one at issue here. Our closest case is *Syntex*, in which Syntex requested an ex parte reexamination of another's patent, which the Patent Office ordered. 882 F.2d at 1571. The reexamination proceeded, but (according to Syntex) the process contained irregularities. *Id.* After the final determination on the merits in the reexamination, Syntex sued in district court under the APA. *Id.* at 1572. The district court dismissed the action, and we affirmed, holding that "Congress intended to limit *appeals from final reexamination decisions* to those initiated by patent owners seeking to reverse an unfavorable decision" and the fact "[t]hat the decision is attacked here on procedural grounds does not make it any less a challenge to the final reexamination decision." *Id.* at 1572–1574, 1576 (emphasis added). In other words, applying *Block* and *Fausto*-like reasoning, *Syntex* holds only that § 306 bars requesters from obtaining review of the decision reached after the ex parte reexamination is conducted—a bar that extends to review of procedural irregularities if they amount to an attempt to set aside the outcome of the reexamination. But, for the reasons already discussed, *Block-Fausto* preclusion does not extend as far as this case, where Alarm.com does not seek review of the outcome of reexamination.

In fact, *Syntex* itself confirms the importance of this distinction in its discussion of *Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988). In *Syntex*, we characterized *Ethicon* as "recogniz[ing], *sub silencio*, that the requester ha[s] a right to have a reexamination proceed, once instigated, and that the district court ha[s] jurisdiction to vindicate that right." 882 F.2d at 1574. We said that "[n]othing in the statute addressed review of the type of issue raised by the *Ethicon* plaintiff," and we contrasted the situation presented in *Syntex* and found preclusion because "the statute provides for review of the reexamination decision and expressly limits such review." *Id.* Here, too, nothing in the statute directly addresses review of the

particular agency decision challenged by Alarm.com, leaving the presumption of reviewability applicable to this situation. *See Sackett*, 566 U.S. at 129–30.[5]

The other two cases on which the government primarily relies likewise leave it short of adequate support. In *Pregis Corp. v. Kappos*, this court held that the presumption of reviewability does not allow a third party to bring an APA suit to challenge the PTO's decision to issue a patent. 700 F.3d 1348, 1356–61 (Fed. Cir. 2012). And in *Exela Pharma Sciences, LLC v. Lee*, this court held the same for the PTO's decision to revive a previously abandoned patent application. 781 F.3d 1349, 1352–53 (Fed. Cir. 2015). In both cases, however, the plaintiffs had no statutory role and no statutory right to vindicate and were instead seeking APA review of an agency determination (on the validity of a patent) that was subject to other statutorily prescribed forms of review, *i.e.*, inter partes review, post-grant review, ex parte reexamination, declaratory judgment actions, defenses to patent infringement. *Pregis*, 700 F.3d at 1358–59; *Exela*, 781 F.3d at 1352–53. In other words, applying *Elgin*-type reasoning, we held that the Patent Act implicitly precluded APA review because those same third parties were granted other review mechanisms. *See also Security People, Inc. v. Iancu*, 971 F.3d 1355, 1361–63 (Fed. Cir. 2020) (discussing and applying *Elgin*); *Personal Audio, LLC v. CBS Corp.*, 946 F.3d 1348, 1352–53 (Fed. Cir. 2020) (same). But, for the reasons already discussed, *Elgin* logic is not applicable here, as the ex parte reexamination

---

[5]   We need not treat *Ethicon* as precedential to reach any holding in this opinion. *See Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[T]he existence of unaddressed jurisdictional defects has no precedential effect."); *see also Automated Merchandising Sys., Inc. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015); *United States v. County of Cook*, 170 F.3d 1084, 1088 (Fed. Cir. 1999).

scheme does not provide other mechanisms of review for the Director's § 315(e)(1) estoppel determination.

In light of this case law, we reject the government's contention that the ex parte reexamination statutory scheme provides clear and convincing evidence that Congress intended to preclude judicial review of determinations like this one, not expressly barred by § 303(c).  Even if the government's interpretation is plausible, at least equally plausible is that Congress intended to preclude only (1) challenges to determinations under § 303(a) that no substantial new question of patentability has been raised, *see* § 303(c), and (2) challenges to the final determination, except those of the patent owner as provided for in §§ 306, 134(b), and 141(b), *see Syntex*, 882 F.2d at 1574—perhaps in order to keep review rights for requesters commensurate with their role at each stage of the proceedings.  A requester, in other words, could enforce the request rights concerning initiation granted by Congress, subject to § 303(c), with the rest of the process left to the Director and patent owner, consistent with the fact that Congress did not grant requesters post-initiation rights in this scheme.

The government suggests that this interpretation presents at least a theoretical potential for "anomalous results"—a requester might have six years, under 28 U.S.C. § 2401(a), in which to bring an APA action in any district court to challenge an estoppel-based decision against initiation, whereas patent owners must adhere to the strictures of 35 U.S.C. §§ 306, 134(b), and 141(b) and 37 C.F.R. § 90.3(a), with a much shorter statute of limitations.  *See* Gov't Br. 35–36; *see also id.* at 41–42 (additionally arguing that it would be anomalous for ex parte reexamination requesters to have certain review rights over initiation, whereas IPR petitioners have comparatively restricted rights under § 314(d)).  We have no reason to think that any such anomalies, if more than theoretical at all, are sufficiently substantial to meet the high standard of justifying a conclusion that, with no review-precluding text, Congress

nevertheless clearly intended to preclude review in these circumstances. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 414 n.13 (2010) ("The possible existence of a few outlier instances does not prove [that an] interpretation is absurd."); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005) ("The omission may seem odd, but it is not absurd."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretations of Legal Texts* 237–38 (2012) (stating that the absurd result must be one that "no reasonable person could intend" and that a "drafter's failure to appreciate the effect of certain provisions" is not sufficient).

C

Finally, as with the textual and statutory-scheme evidence, legislative history does not support an inference of congressional intent to bar review of the determination in question here. The government's strongest evidence is a statement from a House report authored by the Judiciary Committee accompanying H.R. 6933, the enacted version of which created the ex parte reexamination procedure in 1980. Referring to the "Commissioner," which was the title of the PTO's head before it was changed to "Director" in 2000, *see Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1329 n.1 (Fed. Cir. 2000), the report states:

> Subsection 303(c) makes final and nonappealable a decision by the Commissioner not to conduct reexamination. . . . No one would be deprived of any legal right by a denial by the Commissioner of a request for reexamination. A party to a reexamination proceeding could still argue in any subsequent litigation that the PTO erred and that the patent is invalid on the basis of the cited prior art.

H.R. Rep. No. 96-1307, pt. 1, at 7 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 6460, 6466. In contrast, the report notes that § 306 "grants a patent owner the right to pursue

the same appeal routes available to patent applicants" should "an adverse decision" result. *Id.* at 7–8.

But even if the Committee report's language could overcome the presumption of reviewability in the absence of structural features of enacted text of the sort reflected in the cases, there is no reason to infer that the Committee in 1980 was referring to anything other than the ex parte reexamination scheme it was adopting at the time. The scheme being enacted provided for PTO determination of whether a substantial new question of patentability was presented, but the estoppel and multiplicity provisions that now apply, *see* §§ 315(e)(1), 325(d), (e)(1), were added to the statute only well after the 1980 enactment. The Committee report is best understood to be addressing the non-initiation determination for which Congress was enacting a textual bar to review (*i.e.*, § 303(c)), not to be proclaiming (let alone enacting) a preclusion of review of non-initiation decisions yet unavailable.

Furthermore, in 2011, Congress enacted the America Invents Act (AIA), which included § 315(e)(1), and yet it chose to make no substantive modification to § 303(c). *See* Pub. L. No. 112-29, § 6, 125 Stat. 284, 301–02, 311–13 (2011). Indeed, Congress left § 303(c) intact even as it was enacting a broad non-reviewability bar in the new IPR system, *see* § 314(d) ("The determination by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable." (emphasis added)), which broadened the corresponding bar in the inter partes reexamination system being replaced, *see* 35 U.S.C. § 312(c) (versions effective between Nov. 29, 1999 and Sept. 15, 2012) ("A determination by the Director *under subsection (a)* shall be final and non-appealable." (emphasis added)). Moreover, Congress left § 303(c) intact, even though it did modify (albeit modestly) other portions of the ex parte reexamination scheme. *E.g.*, AIA, § 6(h), 125 Stat. at 312–13 (amending 35 U.S.C. §§ 303(a), 306). The retention of § 303(c)'s limitation on its preclusion of review

weakens any case for the required congressional intent, particularly under the current statute, to preclude review for requester challenges to non-initiation beyond what is stated in § 303(c).

The government also points to the history of other review schemes, Gov't Br. 32–33, but no persuasive support for the government's position here is found in the cited history. Specifically, the government contends that it is notable that, while never amending § 306 to grant ex parte reexamination requesters the right to appeal ultimate determinations, Congress has chosen to provide such rights in other proceedings. *See* American Inventor's Protection Act, § 4604, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-569 (1999) (creating 35 U.S.C. §§ 315(b), (c) (version effective between Nov. 29, 1999 and Nov. 1, 2002), which allowed inter partes reexamination requesters to appeal "any final decision favorable to the patentability," while also imposing an estoppel provision); Pub. L. No. 107-273, § 13106, 116 Stat. 1758, 1900–01 (2002) (modifying 35 U.S.C. § 315(b)(1) (version effective between Nov. 2, 2002 and Sept. 15, 2012), such that inter partes reexamination requesters could also appeal directly to this court); 35 U.S.C. §§ 141–44, 319, 329 (granting IPR and post-grant review challengers the right to appeal the final written decision). This evidence is not weighty. That Congress twice granted requesters more review rights over final determinations in the now-repealed inter partes reexamination scheme, and has granted IPR and post-grant review requesters more review rights over final determinations, says little of significance about Congress's intent regarding requester review rights concerning initiation for ex parte reexaminations.

In these circumstances, we conclude, the legislative history evidence, like the statutory scheme evidence, is too weak to supplant the text and the accompanying presumption of judicial review for the estoppel determination in question. *Cf. Milner v. Dep't of the Navy*, 562 U.S. 562, 572

(2011) ("We will not . . . allow[] ambiguous legislative history to muddy clear statutory language."). Accordingly, we hold that review of the Director's § 315(e)(1) estoppel decisions here is available to Alarm.com under the APA.

## III

In addition to determining that the ex parte reexamination statutory scheme precluded Alarm.com's APA challenge to the decisions to vacate the ex parte reexamination proceedings (a ruling we now reverse), the district court determined that Alarm.com lacked standing to pursue a separate APA challenge to the PTO's General Policy, a ruling that Alarm.com also appealed. *Alarm.com*, 2021 WL 2557948, at *3; Alarm.com Br. 41–45. At oral argument in this court, however, Alarm.com clarified that it was withdrawing any separate, "facial" challenge to the General Policy should we hold that it may pursue its §§ 706(2)(A), (C) challenges to the vacatur decisions themselves (including the General Policy "as applied")—challenges Alarm.com undisputedly has standing to pursue. *See* Oral Arg. at 11:23–14:12; J.A. 616. Because the premise of that withdrawal is met by our non-preclusion holding, we do not reach the standing question concerning the now-withdrawn "facial" challenge. We do not opine on what might be the appropriate remedy if Alarm.com succeeds on its §§ 706(2)(A), (C) challenges to the decisions themselves.

## IV

For the foregoing reasons, we reverse the district court's determination that Alarm.com's 5 U.S.C. §§ 706(2)(A), (C) claims challenging the Director's decisions to vacate the ex parte reexamination proceedings are precluded. We do not reach the district court's ruling on standing. We remand for further proceedings consistent with this opinion.

The parties shall bear their own costs.

**REVERSED IN PART AND REMANDED**